| | | |
|---|---|---|
| SHANTE WRIGHT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case no. 4:15cv00720 PLC |
| | ) | |
| CHANTAY GODERT,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Shante Wright seeks federal habeas relief from a Missouri state court judgment entered after a jury trial. See 28 U.S.C. § 2254. Respondent filed a response to the petition, along with exhibits consisting of copies of materials from the underlying state court proceedings.

After careful consideration, the Court denies the petition as without merit.

## I. Background

On March 9, 2009, Petitioner was taken to the emergency room of a hospital in the City of St. Louis, Missouri, after sustaining a head injury. Trial Tr., Resp't Ex. A, at 168, 227-29 [ECF No. 7-1]. During the examination, Petitioner left the emergency room, while wearing only a neck brace and tennis shoes. Id. at 147, 233-34. Hospital security officers eventually restrained Petitioner, lowered him to the floor, and then returned him to the emergency room. Id. at 131-37, 234-35. During the incident, Petitioner excreted what "looked like a white substance," wrapped in clear plastic having "brown residue" on it. Id. at 133-36. A hospital

---

[1] When Petitioner filed this habeas action, he was incarcerated at South Central Correctional Center, where Michael Bowersox, the originally named Respondent, was the warden. Petitioner is now incarcerated at the Northeast Correctional Center ("NECC"), where Chantay Godert is the warden. Therefore, the Court substitutes Chantay Godert, for Michael Bowersox, as the Respondent in this habeas proceeding. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

security officer took the object and secured it until a St. Louis police officer took custody of it. Id. at 134-36.

The State of Missouri charged Petitioner, as a persistent drug offender and as a prior and persistent offender, with committing on March 9, 2009, trafficking in the second degree in violation of Missouri Revised Statutes Section 195.223.  Legal File, Resp't Ex. B, at 14-15 Indictment, filed Apr. 3, 2009 [ECF No. 7-2].  Specifically, the State alleged that Petitioner "possessed 6 grams or more of a mixture or substance containing cocaine base, a controlled substance, knowing of its presence and nature."  Id.

Pre-trial proceedings

Until July 2010, Petitioner was represented during pretrial proceedings by an attorney who was not the attorney representing Petitioner during trial.  Upon arraignment, the parties engaged in discovery, and the trial court initially scheduled and rescheduled trial until it was set on July 27, 2009.  See id. at 9-10, docket entries for Apr. 9, 2009, May 11, 2009, and May 20, 2009.  The trial court then granted Petitioner's request for a continuance of the trial because the parties had not completed discovery and needed to schedule depositions.  See id. at 9, docket entry for July 22, 2009.  The case was scheduled for trial on September 28, 2009 and then rescheduled for November 9, 2009.[2]  See id. at 8-9, docket entries for July 22, 2009 and Sept. 18, 2009.

Prior to the November 2009 trial date, the trial court granted Petitioner's motion for the State to disclose "any and all 911 calls and dispatch communications . . . related to the pick up of [Petitioner] on March 9, 2009 around" 9:30 p.m.  See id. at 9 docket entry for July 31, 2009; id.

---

[2]  The docket sheet reveals that in November 2009, the trial court "attempted to call for jurors but no[n]e were available."  Nov. 12, 2009, docket entry, Legal File, Resp't Ex. B. at 8.

at 17-18, Pet'r mot. 911 tape pursuant to Rule 25.04 and mot. show cause.  Additionally, Petitioner filed a "motion in limine to exclude seized narcotics and laboratory results" from trial. Id. at 19-23, Pet'r mot. limine exclude seized narcotics and laboratory report.  In his motion in limine, Petitioner asserted testimony during two separate depositions "contradicted each other and the police report as to when and where the drugs were discovered" and neither of the deponents saw where the drugs were before they were discovered.  Id. ¶ 2.  Therefore, Petitioner contended, "the admission of the seized narcotics and the admission of the laboratory report violate chain of custody requirements."  Id. ¶ 4.

The trial was rescheduled for January 11, 2010 and then, due to attorney conflict, rescheduled for March 22, 2010.  See id. at 8, docket entries for Nov. 17, 2009 and Jan. 15, 2010. In March 2010, Petitioner considered entering a plea of guilty and then decided not to do so.  See id. at 7, docket entries for Mar. 10, 2010 and Mar. 23, 2010.  The trial court rescheduled trial for May 10, 2010, reset trial twice due to attorney conflicts for each side, and then set trial for July 26, 2010.  See id., docket entries for Mar. 30, 2010, Apr. 30, 2010 and June 14, 2010.

The attorney representing Petitioner during trial entered his appearance for Petitioner on July 2, 2010.  See id., docket entry for July 2, 2010.  Over the State's objection, Petitioner's attorney requested a continuance of the July 26, 2010 trial date due to having an "[i]nadequate time to prepare."  See id., docket entry for July 14, 2010.  Trial was rescheduled for August 23, 2010.  See id.

In August 2010, Petitioner filed a motion for independent forensic testing.  Id. at 24-26, Pet'r mot. independent forensic testing.  Petitioner acknowledged in the motion that the State had "turned over lab report 0001 . . . to the defense . . . alleging evidence contained in the report was seized from" Petitioner.  Id. ¶ 2.  Specifically, the report referred to "'knotted plastic bags'

containing an 'off-white, rock-like' or 'lumpy' substance" in the possession of the SLMPD Crime Lab. Id. ¶¶ 3-4. Petitioner stated he understood the State was going to use the evidence against Petitioner at trial because the State had provided the report and endorsed the laboratory technician. Id. ¶ 5. Petitioner identified a company to conduct the independent forensic testing and stated the company would "complete testing and analysis in approximately four weeks from the time the analyst receives the evidence." Id. ¶ 8. Petitioner asked the trial court to allow the testing and to order the SLMPD Crime Lab "to release the . . . plastic bags for testing at" the laboratory Petitioner specified. Id. "Wherefore" paragraph. Petitioner also asked the trial court for a continuance of the August trial setting because a "[l]ab test [was] unavailable." See id. at 6, docket entry for Aug. 23, 2010.

Over the State's objection, the trial court granted Petitioner's motion for independent forensic testing and rescheduled trial for October 12, 2010. See id., docket entries for Aug. 23, 2010 and Aug., 25, 2010; id. at 29, Order granting Pet'r mot. independent forensic testing. The trial court also granted the State's motion to compel Petitioner to submit to buccal swabs to obtain Petitioner's DNA "to complete the analysis and comparison of the plastic bag taken from the scene." See id. docket entry for Aug., 25, 2010; id. at 27-28, State's mot. compel Pet'r submit to taking of buccal swabs.

The trial court then granted Petitioner's request for a continuance of trial because the "[l]ab test [was] unavailable," and rescheduled trial for November 29, 2010. See id. at 6, docket entry for Sept. 22, 2010. Petitioner also filed a motion to compel discovery, relying in part on Brady v. Maryland, 373 U.S. 83, 87 (1963). Legal File, Resp't Ex. B, at 30-32, Pet'r mot. compel discovery [ECF No. 7-2]. Specifically, Petitioner stated in the motion to compel that:

> counsel reasonably believes the state crime lab compared forensic evidence taken
> from the plastic baggies with the buccal swab obtained from [Petitioner] and a

determination has been made based on a comparison of the two samples . . . [and] the results of the state crime lab's forensic testing of the baggies bears directly on [Petitioner]'s guilt or innocence.

Id. ¶¶ 8, 10.  Based on his right to due process and Brady, Petitioner requested an order that "the State of Missouri . . . turn over laboratory results from the forensic testing of [Petitioner]'s DNA profile obtained from [Petitioner] during the pendency of this case."  Id., "Wherefore" paragraph.

Petitioner subsequently filed a motion to dismiss based on the reported destruction of the bags during testing by the SLMPD before the independent lab had access to the bags.  Id. at 33-35, Pet'r mot. dismiss.  Arguing that "[t]he bags [we]re material exculpatory evidence," Petitioner contended their destruction by the State made Petitioner "unable to obtain comparable evidence by other reasonably available means" and violated Petitioner's right to due process under Brady, supra.  Id. ¶¶ 12, 13.  The trial court heard argument on Petitioner's motion to dismiss and denied the motion, continued the trial to February 7, 201l, and set January 21, 2011 as the deadline for completing depositions.  See id. at 5, docket entry for Dec. 1, 2010.  On January 26, 2011, the trial court continued trial to March 7, 2011, at Petitioner's request, because "[d]iscovery [was] [i]ncomplete."  Id., docket entry for Jan. 26, 2011.  The docket sheet does not report a request by Petitioner for a continuance of the March 7, 2011 trial date.

## Trial proceedings

During the March 2011 trial, the State introduced several exhibits and presented the testimony of five witnesses:  Brian Gregory, Michael Wembly, David Kalu, Kyra Lienhop, and Brittany Cange.  Trial Tr., Resp't Ex. A, at 122-217 [ECF No. 7-1].  Mr. Gregory, the hospital security supervisor on the evening shift on March 9, 2009, testified that he responded to the call that Petitioner left the emergency room, helped restrain Petitioner, and saw, from a distance, the

object Petitioner excreted. Id. at 123-33. Mr. Gregory testified that he did not work for the police department. Id. at 137.

Mr. Wembly, a hospital security officer who was working on March 9, 2009, testified that he responded to the call that Petitioner had left the emergency room, and observed, after Petitioner was on the floor, "two golf-ball-size bags wrapped in cellophane [with a brown substance on them] . . . [o]n the ground between [Petitioner's] legs." Id. at 151-52. Mr. Wembly picked up the objects, "took them to the emergency room, placed them inside a biohazard bag, and then locked them inside the safe." Id. Describing the objects in more detail, Mr. Wembly stated there were two bags, "[o]ne with a larger rock in it and the other one [contained] smaller rocks that looked like they were wrapped individually" in cellophane. Id. at 155, 165. Mr. Wembley testified that he did not work for the police department. Id. at 157. David Kalu, who worked for the St. Louis Metropolitan Police Department ("SLMPD") on March 9, 2009, went to the hospital and spoke with Mr. Gregory and a physician about the incident with Petitioner, before taking custody of the objects the hospital security officers had obtained. Id. at 169-72.

Ms. Lienhop worked as a DNA analyst for the SLMPD Crime Laboratory. Id. at 182. The prosecutor asked Ms. Lienhop to analyze "a baggie that was allegedly from [Petitioner]'s rectal cavity that contained controlled substances." Id. at 187. Ms. Lienhop obtained no DNA profile as a result of her testing of the fecal matter on the outside of the plastic bag. Id. at 191. Acknowledging that there can be "difficulty getting DNA from fecal matter," Ms. Lienhop explained, in part, that "fecal material has a lot of bacteria in it and bacteria can . . . degrade . . . DNA." Id. at 188.

Brittany Cange worked as a forensic chemist for the SLMPD Crime Laboratory. Id. at 199. Ms. Cange testified that she re-tested the white substance in the bags approximately one

month prior to trial, finding it tested positive for cocaine base and weighed approximately eleven grams. <u>Id.</u> at 205.

At the conclusion of the State's evidence, the trial court found that Petitioner was a prior and persistent offender, as well as a prior and persistent drug offender, and denied Petitioner's motion for judgment of acquittal. <u>Id.</u> at 219-20. Petitioner testified and presented two other witnesses, Dr. Craig Krausz and SLMPD Officer Kalu. Dr. Krausz was the emergency room physician who attended Petitioner on March 9, 2009, and testified to his participation in the treatment of Petitioner and in Petitioner's incident. <u>Id.</u> at 221-49. Officer Kalu testified he was not at the hospital during Petitioner's incident; and, after he arrived, he spoke briefly with Dr. Krausz about what Dr. Krausz saw and did while taking care of Petitioner. <u>Id.</u> at 250-55. Petitioner testified that, prior to arriving at the hospital, he was approached, handcuffed and transported in a vehicle by three unidentified police officers and became unconscious, until he remembered "hopping up," "walking away," and "being put down in the hall" while he was in the hospital. <u>Id.</u> at 254-84. The trial court denied Petitioner's motion for judgment of acquittal at the close of all the evidence. <u>Id.</u> at 288; <u>see also</u> Legal File, Resp't Ex. B, at 39-40, Pet'r mot j. acquittal close all evidence [ECF No. 7-2]. The jury found Petitioner guilty of second-degree trafficking. Trial Tr., Resp't Ex. A, at 313-16 [ECF No. 7-1]; Verdict, Legal File, Resp't Ex. B, at 51 [ECF No. 7-2].

In his motion for judgment of acquittal or, in the alternative, motion for new trial, Petitioner presented five claims of trial court error. <u>See</u> Legal File, Resp't Ex. B, at 54-65. In particular, Petitioner contended the trial court erred in: admitting two exhibits, allowing "a sheriff to follow [Petitioner] to and from the [witness] box during his testimony as well as standing behind [Petitioner] while he testified"; and overruling Petitioner's "motion for judgment

of acquittal at the close of the state's evidence [and at the close of all the evidence] in that the state failed to prove the elements of the crime alleged in the indictment and the evidence was insufficient to support a finding of guilt." <u>Id.</u> At the sentencing hearing, the trial court denied Petitioner's motion for judgment of acquittal or for new trial, filing a memorandum and order addressing the decision regarding Petitioner's challenge to the presence of the deputy while Petitioner testified. Trial Tr., Resp't Ex. A, at 320-23 [ECF No. 7-1]; Mem. and Order, Legal File, Resp't Ex. B, at 66-68 [ECF No. 7-2]. The trial court sentenced Petitioner to a twenty-two year term of imprisonment, "to be served concurrently with any sentence previously imposed." Trial Tr., Resp't Ex. A, at 323-29 [ECF No. 7-1]; J. filed May 6, 2011, Legal File, Resp't Ex. B, at 69-72 [ECF No. 7-2].

Direct appeal

Petitioner, through counsel, presented one point in his direct appeal:

> [t]he trial court erred in allowing a sheriff's deputy to guard [Petitioner] by following him to the witness stand, standing behind him while he testified in his own defense, and following him back to counsel table after he testified, without any case-specific consideration for any need of heightened security, because the deputy's actions undermined the presumption of innocence and violated [Petitioner]'s right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments . . . in that the court did not exercise any discretion before placing the deputy, but rather employed this inherently prejudicial and unnecessary practice as a matter of course.

Pet'r Br., Resp't Ex. C, at 20 [ECF No. 3].

The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in an unpublished <u>per</u> <u>curiam</u> order accompanied by a memorandum sent to the parties only setting forth the reasons for the order affirming the judgment. <u>See</u> <u>State v. Wright</u>, No. ED 96772 (Mo. Ct. App. filed Oct. 16, 2012), Resp't Ex. E [ECF No. 7-5]. In part, while upholding the trial court's judgment, the Missouri Court of Appeals concluded any error was harmless

because "the evidence of [Petitioner]'s guilt was overwhelming." Mem. suppl. order affirming j. pursuant to Mo. S. Ct. Rule 30.25(b), Resp't Ex. E, at 6-7. In particular, the Missouri Court of Appeals summarized the evidence against Petitioner as follows:

> [Petitioner] fled the trauma room of the hospital where he was being treated when the medical team was about to start a rectal exam, and briefly roamed the hallways nude until security personnel restrained him. Two witnesses heard the sound of flatulence, smelled an odor associated with flatulence and fecal matter, and saw a clear plastic bag containing a white substance between [Petitioner]'s legs, with the clear plastic bag partially coated with feces. The white substance in the bag was determined to be crack cocaine.

Id. The Missouri Court of Appeals issued its mandate on November 8, 2012. See November 8, 2012, entry on docket sheet for State v. Wright, No. ED96772 (Mo. Ct. App. filed May 11, 2011) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Jan. 31, 2019)).

### Post-conviction proceedings

Petitioner filed a pro se motion for post-conviction relief ("PCR") seeking relief based on five claims that the trial court erred, five claims that Petitioner's trial attorney provided ineffective assistance of counsel, and one claim that Petitioner's attorney on direct appeal provided ineffective assistance of counsel. Pet'r PCR mot. ¶ 8, PCR Legal File, Resp't Ex. G, at 5-6 [ECF No. 7-7]. Through appointed counsel, Petitioner filed an amended PCR motion claiming his trial attorney provided ineffective assistance of counsel and requesting an evidentiary hearing. Pet'r am. PCR mot., PCR Legal File, Resp't Ex. G at 17-27 [ECF No. 7-7]. More specifically, Petitioner asserted in support of his ineffective assistance of trial counsel claim in his amended post-conviction motion that:

> trial counsel's advice that [Petitioner] must testify during trial was not reasonable trial strategy in that (a) [Petitioner]'s testimony undermined his theory of defense, or at the very least, did nothing to support it and (b) trial counsel should have known that [Petitioner]'s allegations of police misconduct would cause any

> reasonable court to punish [him] for making such allegations with a harsher sentence.

Id. at 18.  After conducting an evidentiary hearing at which Petitioner's trial attorney testified, and after considering Petitioner's deposition testimony, the motion court denied Petitioner's amended PCR motion.  Mot. Ct. findings of fact, conclusions of law, order and j., PCR Legal File, Resp't Ex. G, at 52-56 [ECF No. 7-7].

Post-conviction appeal

Petitioner pursued, through counsel, one point in his post-conviction appeal.  Petitioner contended the motion court erred in denying his request for relief after an evidentiary hearing because:

> [Petitioner] proved facts showing he was denied his rights to due process and effective assistance of counsel [as guaranteed by the Fifth, Sixth, and Fourteenth Amendments] in that trial counsel's advice that [Petitioner] should testify in his own defense was not reasonable in that it did not support the theory of defense and it placed [Petitioner] at risk of a harsher sentence.

Pet'r Br., Resp't Ex. H, at 11 [ECF No. 7-8] (footnote omitted).  Furthermore, Petitioner urged, the motion court's finding that the "evidence against [Petitioner] was clear and trial counsel's recommendation that [Petitioner] testify was reasonable . . . is not supported by the record." Id.

The Missouri Court of Appeals for the Eastern District affirmed the motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order affirming the judgment.  Wright v. State, No. ED101058 (Mo. Ct. App.  Feb. 17, 2015), Resp't Ex. J [ECF No. 7-10].  In affirming the motion court's judgment, the Missouri Court of Appeals concluded Petitioner wholly failed to demonstrate any clear error in the motion court's finding and conclusion that counsel's advice to [Petitioner] to testify was a reasonable trial strategy and was not the ineffective assistance of counsel." Mem. suppl. order affirming j. pursuant to Mo. S. Ct. Rule

84.16(b), Resp't Ex. J, at 3.  The Missouri Court of Appeals issued its mandate on March 17, 2015.  See March 17, 2015, entry on docket sheet for <u>Wright v. State</u>, No. ED101058 (Mo. Ct. App. filed Feb. 14, 2015) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Jan. 31, 2019)).

Petitioner then filed his pending habeas petition.

## II. Grounds for relief

Petitioner sets forth three grounds for relief in his habeas petition:  (1) the conviction was obtained "by use of evidence gained p[u]rsuant to an unconstitutional search and seizure"; (2) the conviction was "obtained by [an] unconstitutional failure of [the] prosecution to disclose [to Petitioner] evidence favorable to" him; and (3) his trial attorney provided ineffective assistance of counsel.  Pet'r pet'n at 5-6 [ECF No. 1 at 3-4].  In support of his first ground, Petitioner states "[d]rugs were said to be found on [him] at the hospital '(in [his] butt).'  Then they changed to getting them off the ground in the [vicinity] of 12 or more people and nobody actually saw where they came from."  <u>Id.</u> at 5.  For his second ground, Petitioner states that:

> [d]uring the pretrial portion of [his] case [he] was asked to take a[] DNA test to determine if said drugs were in [his] rectum.  [He] was told that if [his] DNA was on the bag the plea-bargain would change drastically.  But when [his] DNA wasn't on the bag, it was never brought up and deemed irrelevant.

<u>Id.</u>  For his third ground for relief, Petitioner asserts "that [his trial attorney] didn't have the proper time to prepare for trial . . . due to a very large caseload" and "[his trial attorney] ask[e]d for a continuance and [the request] was denied without a reason."  <u>Id.</u> at 6.

Respondent counters that the grounds are procedurally defaulted, because Petitioner did not exhaust them by pursuing them in his state court proceedings, including his direct and post-conviction appeals.  Resp't response at 8-9 [ECF No. 7].  Respondent further contends that Petitioner has not demonstrated either cause and prejudice or a manifest injustice sufficient to

avoid the procedural default of the claims.  Id.  Respondent also argues, in the alternative, that

each ground for relief lacks merit.  More specifically, Respondent urges that (1) the State of

Missouri provided Petitioner the opportunity to challenge the search and seizure in state court;

(2) Brady only requires disclosure of favorable evidence and the prosecutor disclosed the

favorable DNA analysis; (3) Petitioner did not sufficiently allege his ineffective assistance of

trial counsel claim and (4) the record does not support Petitioner's assertion that his trial attorney

unsuccessfully requested a continuance prior to trial.  Id. at 10-19.

### III. Discussion

A.  Standard of review – Exhaustion

A state prisoner must exhaust available state remedies before obtaining federal habeas

relief.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  The exhaustion doctrine requires state

prisoners to give "state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process."  Id. at 845.

"Under Missouri law, an appeal to the intermediate state appellate court sufficiently exhausts

state remedies to permit federal habeas review under section 2254."  Taylor v. Roper, 561 F.3d

859, 861 n. 2 (8th Cir. 2009).

The undisputed record establishes that Petitioner did not present the grounds for relief he

pursues in his habeas petition to the Missouri Court of Appeals, either during his direct appeal or

his post-conviction appeal.  Section 2254(b)(2) allows a habeas court to deny a habeas petition

on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State."  Assuming, without deciding, that Petitioner failed to exhaust his

grounds for relief, the Court will ascertain whether Petitioner's grounds have merit.  If the Court

concludes any of Petitioner's grounds for relief have merit, the Court will more fully address

12

whether Petitioner exhausted the claim. If the grounds lack merit, the Court will deny the petition. See 28 U.S.C. § 2254(b)(2).

B. Standard of review – Merits

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), applies to all habeas petitions filed by state prisoners after the statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). Under Section 2254(d), a district court is limited to deciding whether decisions of the state court "on the merits" were (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA's limited, deferential standard of review does not, however, apply to a federal habeas court's consideration of a ground for relief that was not decided on the merits by the state courts. See, e.g., Cone v. Bell, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of [the petitioner]'s Brady claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed de novo"); accord Storey v. Roper, 603 F.3d 507, 518 (8th Cir. 2010) (reviewing a state prisoner's habeas claim "de novo, rather than under the deferential § 2254 standard, because it was not adjudicated on the merits" in state court). The pre-AEDPA standard of de novo review of a state prisoner's habeas claims is "less deferential," Gingras v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008) and "more liberal," Robinson v. Crist, 278 F.3d 862, 865-66 (8th Cir. 2002), than the AEDPA standard of review.

(1) Unconstitutional search and seizure (Ground one)

Petitioner alleges his second-degree trafficking conviction was obtained "by use of evidence gained p[u]rsuant to an unconstitutional search and seizure." In particular, Petitioner bases this ground for relief on a purported contradiction in evidence regarding the location of the drugs (either inside his body or on the floor).

Respondent counters that a state prisoner's habeas claim that evidence obtained in violation of the Fourth Amendment was introduced during a state criminal trial is not cognizable in a habeas proceeding when the state provides an opportunity for full and fair litigation of the Fourth Amendment claim. Because Missouri provides an opportunity to litigate a Fourth Amendment claim and Petitioner did not take advantage of the opportunity, Respondent contends Petitioner may only pursue this claim as an ineffective assistance of counsel claim, which Petitioner does not present.

Respondent relies on Stone v. Powell, 428 U.S. 465 (1976) in support of his argument. In Stone, the United States Supreme Court concluded that a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at the petitioner's trial when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Id. at 494 (footnotes omitted).

To ascertain whether, as required by Stone, a petitioner has had an opportunity for full and fair litigation of his Fourth Amendment claim in state court, the Eighth Circuit adopted the Second Circuit's two-part test set forth in Capellan v. Riley, 975 F.2d 67, 70 (2nd Cir. 1992). Willett v. Lockhart, 37 F.3d 1265, 1271-72, 1273 (8th Cir. 1994) (en banc). The first part of the test is "simple enough – either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." Id. at 1272. With respect to the second part of the test, whether the defendant was precluded from using the State's

procedure due to an "unconscionable breakdown in the underlying process," the Eighth Circuit stated "it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions." Id. (footnote omitted). A federal habeas court need not engage in "a probing review of the state court record" to determine whether there was a breakdown in the state's procedure, at either the trial or appellate court level. Id. Importantly, the Eighth Circuit concluded that "[t]he federal courts on habeas review of [Fourth Amendment] claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." Id. at 1273 (emphasis in original).

Respondent argues that Missouri Supreme Court Rule 24.05 authorizes defendants in a criminal case to file a pretrial motion to suppress evidence, thus meeting the first part of the test. See also Mo. Rev. Stat. § 542.296.[3] Petitioner does not dispute the availability of a mechanism in Missouri state courts to present Fourth Amendment search and seizure issues in a criminal case.

The second part of the test requires a habeas court to consider whether a petitioner was precluded from using that mechanism because of "an unconscionable breakdown in the underlying process." Willett, 37 F.3d at 1271. The Eighth Circuit has noted that an "unconscionable breakdown" may occur "under circumstances where a defendant was actually denied the opportunity to present a constitutional claim to the state court." Cole v. Parratt, 688 F.2d 59, 61 n.3 (8th Cir. 1982) (per curiam).

---

[3] Section 542.296 generally sets forth guidelines for the filing and content of a motion to suppress presented by a defendant in a Missouri criminal proceeding. Section 542.296.5(5) specifically permits a defendant in a Missouri criminal proceeding to file a motion to suppress based on an argument "the search and seizure violated the [defendant's] rights . . . under . . . the fourth and fourteenth amendments of the Constitution of the United States."

The record reveals Petitioner was not denied an opportunity to present his constitutional claim to a Missouri court. Rather, Petitioner appears to argue only that he had reasons for failing to submit his Fourth Amendment claim, namely he is "law illiterate" and his "lawyer was ill-prepared."[4] See pet'n at 6 [ECF No. 1]. While his characterizations of his or his lawyer's ability might explain his failure to present his search and seizure claim to the state trial court, they do not support a finding that he was precluded from presenting the search and seizure claim to the state court due to "an unconscionable breakdown in the underlying process." Because there is no dispute that Missouri provided Petitioner with a procedure for presenting his Fourth Amendment search and seizure claim in state court, and the record fails to disclose support for an argument that Petitioner was precluded from presenting his claim to the state court, Petitioner may not obtain habeas relief based on his Fourth Amendment search and seizure claim under Stone, supra.[5]

(2) Failure of prosecution to disclose favorable material (Ground two)

---

[4] Respondent relies on Kimmelman v. Morrison, 477 U.S. 365 (1984) for his argument that Petitioner is limited to pursuing his Fourth Amendment claim as an ineffective assistance of trial counsel claim on the ground his trial attorney failed to file a motion to suppress. In Kimmelman, the Supreme Court did not extend the restriction on review of a state prisoner's Fourth Amendment habeas claim under Stone to a state prisoner's Sixth Amendment habeas claim that a trial attorney provided ineffective assistance of counsel by failing to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. Id. Because Petitioner does not present an ineffective assistance of counsel claim arising out of any alleged failure of his trial attorney to file a motion to suppress, this Court need not further discuss such a claim.

[5] Even if the Court considered Petitioner's search and seizure claim, the record clearly discloses that (1) only hospital personnel were involved in the treatment and restraint of Petitioner during the incident at the hospital; (2) the baggies were discovered on the floor where Petitioner, the only naked person in the vicinity, was restrained; (3) hospital security personnel seized the baggies; and (4) there is no indication the hospital security personnel seizing the baggies (a) were employed by or instructed by any government official or (b) seized the baggies with the prior participation or knowledge of any government official. Therefore, no Fourth Amendment violation occurred under the circumstances here. See, e.g., United States v. Jacobsen, 466 U.S. 109, 113-14 (1984) (the Fourth Amendment only proscribes "governmental action" and is "wholly inapplicable" "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks and citation omitted)).

Petitioner asserts his conviction was "obtained by [an] unconstitutional failure of [the] prosecution to disclose [to Petitioner] evidence favorable to" him. More specifically, for his second ground, Petitioner states that:

> [d]uring the pretrial portion of [his] case [he] was asked to take a[] DNA test to determine if said drugs were in [his] rectum. [He] was told that if [his] DNA was on the bag the plea-bargain would change drastically. But when [his] DNA wasn't on the bag, it was never brought up and deemed irrelevant.

Characterizing this ground as a <u>Brady</u> claim, Respondent contends that "a <u>Brady</u> claim has three elements," one of which is a failure by the State to disclose the exculpatory evidence. Resp't response at 15-16 [ECF No. 7]. Respondent urges Petitioner "does not allege that the State failed to disclose the evidence," but instead that "the results of the test were never presented at trial and were deemed irrelevant." <u>Id.</u> at 16. Because the State did not withhold the DNA test results and presented the test results during trial, Respondent argues Petitioner's <u>Brady</u> claim is not meritorious.

Respondent relies on <u>Strickler v. Greene</u>, 527 U.S. 263 (1999) to support his <u>Brady</u> analysis. In <u>Strickler</u>, the Supreme Court clarified: "There are three components of a true <u>Brady</u> violation. The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; <u>th[e favorable] evidence must have been suppressed by the State</u>, either willfully or inadvertently, and prejudice must have ensued." <u>Id.</u> at 281-82 (emphasis added).

In his argument that this ground lacks merit, Respondent contends Petitioner fails to establish a <u>Brady</u> violation because Petitioner does not allege the State suppressed the favorable DNA test results. "A defendant fails to show the prosecution suppressed evidence [for a <u>Brady</u> claim] when the defendant was aware of and had access to the evidence" prior to trial. <u>United States v. Walrath</u>, 324 F.3d 966, 969 (8th Cir. 2003) (the defendant failed to establish the State's

suppression of the evidence because "[b]efore trial, the [evidence] was acknowledged and made available to" the defendant).

In his petition, as Respondent points out, Petitioner makes allegations of his awareness prior to trial that the DNA test results were favorable. For instance, Petitioner notes in his petition that "[d]uring the pretrial portion of [his] case, [he] was asked to take a[] DNA test to determine if [the] drugs were in [his] rectum." Petitioner also mentions in his petition that: "if [his] DNA was on the bag the plea-bargain would change drastically but when [his] DNA was [not] on the bag, it was never brought up and deemed irrelevant." The state court docket sheet reveals the only reported "plea-bargain" effort occurred in or prior to March 2010 when a change of plea proceeding was scheduled. This "plea-bargain" effort occurred, therefore, approximately one year prior to Petitioner's March 2011 trial. The record demonstrates the State did not suppress the favorable DNA test results under <u>Brady</u> because Petitioner was aware of the DNA test results prior to trial.

Additionally, in the Eighth Circuit, "[a] mid-trial disclosure violates <u>Brady</u> only if it comes too late for the defense to make use of it." <u>United States v. Tyndall</u>, 521 F.3d 877, 882 (8th Cir. 2008) (citing <u>United States v. Almendares</u>, 397 F.3d 653, 664 (8th Cir. 2005)). Therefore, even if the Court concluded that the disclosure to Petitioner of the DNA test results did not occur until the State presented the DNA analyst's testimony during the State's case-in-chief, the timing of that disclosure does not violate <u>Brady</u> if Petitioner was able to use the evidence. Here, Petitioner makes no showing that the defense was unable to make use of the information at that point. In fact, as Respondent notes, Petitioner's counsel cross-examined the DNA analyst about the testing. Resp't response at 15 [ECF No. 7]. Furthermore, during his closing argument, Petitioner's counsel used the test results as support for Petitioner's version of

events.  See, e.g., Trial Tr., Resp't Ex. A, at 300 [ECF No. 7-1].  Because the record establishes that defense counsel used the lack of DNA evidence at trial, any failure to disclose the results until trial did not violate Brady.

Under the circumstances, Petitioner has not established that any alleged suppression of the favorable DNA test results by the State violated Brady.

### (3)  Ineffective assistance of trial counsel/Denial of continuance (Ground three)

Petitioner asserts his trial attorney provided ineffective assistance of counsel. Specifically, Petitioner alleges "that [his trial attorney] didn't have the proper time to prepare for trial . . . due to a very large caseload" and "[his trial attorney] ask[e]d for a continuance and [the request] was denied without a reason."  Respondent counters that the record does not support Petitioner's position that the trial court denied a continuance request by Petitioner's trial attorney and Petitioner's allegations are insufficient to allow the Court to consider his ineffective assistance of trial counsel claim.

Respondent relies on Strickland v. Washington, 466 U.S. 668 (1984) for the elements of an ineffective assistance of counsel claim.   Under Strickland, a petitioner must show the attorney's performance was deficient and the attorney's deficient performance prejudiced the petitioner's defense.  Id. at 687.  For the first, or "performance prong," a petitioner must show that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  Id. at 688.   Importantly, a court's review of an attorney's performance is "highly deferential," includes "a strong presumption that counsel's conduct falls with a wide range of reasonable professional assistance" and constitutes "sound trial strategy," and requires consideration of the reasonableness of the challenged conduct "on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 689-90.

To establish the second, or "prejudice," prong under <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. Importantly, a court may address the two requirements in any order and need not address both requirements if there is "an insufficient showing on one." <u>Id.</u> at 697.

Respondent urges the Court to conclude Petitioner has not "state[d] specific, particularized facts which entitle him . . . to habeas corpus relief" for the ineffective assistance of counsel claim as required by <u>Adams v. Armontrout</u>, 897 F.2d 332, 334 (8th Cir. 1990). In <u>Adams</u>, the Eighth Circuit held substantial compliance with Rule 2(c) of the Rules Governing Habeas Corpus Cases Under Section 2254 ("Habeas Rules") requires a petitioner to "state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified [and t]hese facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." <u>Id.</u>

Petitioner failed to bolster his non-specific claim that his trial attorney "didn't have the proper time to prepare for trial . . . due to a very large caseload" with facts showing in what way the allegedly insufficient time adversely affected counsel's trial preparation. The Court's review of the docket sheet, legal file, and trial transcript does not reveal any obviously deficient performance by Petitioner's trial counsel that may be attributed to insufficient time for trial preparation.[6] To the contrary, a review of the available record shows that, in representing Petitioner, Petitioner's trial counsel diligently pursued Petitioner's defense prior to trial (through discovery efforts and pretrial motions, in particular focused on the DNA testing) and throughout

_____

[6] Review of the available state court record also establishes that Petitioner's trial attorney did not request a continuance of the March 2011 trial date and successfully requested continuances of earlier trial dates.

the trial (through active participation in voir dire, presentation of an opening statement and closing argument, and the questioning and presentation of witnesses). Additionally, Petitioner's allegations, as well as the record, provide insufficient support for a conclusion that, absent Petitioner's trial attorney's challenged conduct, the result of Petitioner's trial would have been different. Under the circumstances, Petitioner is not entitled to relief based on his trial attorney's allegedly ineffective assistance of counsel due to inadequate trial preparation.

## IV. Certificate of Appealability

A "district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." Habeas Rule 11(a). A judge may issue a certificate of appealability only if a petitioner has made "a substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). To satisfy this requirement, a petitioner must demonstrate the issues are debatable among reasonable jurists with respect to either resolving the issues differently or requiring further proceedings. Id. See also Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (to obtain a certificate of appealability when a federal habeas court resolves issues on their merits, the petitioner must demonstrate that "reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong").

The Court concludes Petitioner has not made a substantial showing of the denial of constitutional rights as required by Miller-El and Slack. Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

## V. Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Chantay Godert, the warden of the NECC where Petitioner is now in custody, is **SUBSTITUTED** for Michael Bowersox as the Respondent in this case.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of February, 2019